SEATRAIN LINES, INC., Appellant,

v.

Luther H. HODGES, Secretary of Commerce, et al., Appellees.

No. 17174.

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 29, 1963.

Decided June 6, 1963.

Petition for Rehearing En Banc Denied
En Banc Aug. 1, 1963.

---

15. Cf. Carter v. United States, 103 U.S.App.D.C. 405, 408, 283 F.2d 200, 203 (1960).

Mr. Warren E. Baker, Washington, D. C., with whom Mr. Albert L. Ledgard, Jr., Washington, D. C., was on the brief, for appellant.

Mr. Carl C. Davis, Attorney, Department of Justice, of the bar of the Supreme Court of Oklahoma, pro hac vice, by special leave of court, with whom Acting Asst. Atty. Gen., Joseph D. Guilfoyle, Messrs. David C. Acheson, U. S. Atty., and John G. Laughlin, Jr., Attorney, Department of Justice, were on the brief, for appellee Hodges and certain other appellees.

Mr. Daniel M. Gribbon, Washington, D. C., with whom Messrs. Robert L. Randall and John E. Vanderstar, Washington, D. C., were on the brief, for appellee Waterman Steamship Corporation and certain other appellees.

Before BAZELON, Chief Judge, and BASTIAN and BURGER, Circuit Judges.

BURGER, Circuit Judge.

This is an appeal from an order of the District Court granting summary judgment in favor of appellees.

Appellant Seatrain Lines, Inc., is a domestic coastwise carrier operating between East and Gulf Coast ports. Appellee, Sea-Land Service, Inc., is a principal competitor of Seatrain. Sea-Land and appellee Waterman Steamship Corporation and Waterman of Puerto Rico, not a party here, were wholly owned subsidiaries of appellee McLean Industries, Inc., prior to January 1957. On January 30, 1957, Waterman, then an unsub-

sidized ocean carrier in foreign commerce, filed an application with the Maritime Subsidy Board [1] for an operating-differential subsidy contract covering certain of its operations on foreign trade routes.[2] Thereafter Waterman also applied to the Board for written permission under Section 805(a) of the Merchant Marine Act, 1936, 46 U.S.C. § 1223(a), to continue the operations of its two domestic affiliates Sea-Land and Waterman of Puerto Rico. The Board held hearings pursuant to the express command of Section 805(a) on the application to continue domestic affiliation and Seatrain intervened. The Board granted written permission to Waterman to continue its domestic affiliations subject to restrictions, and at the same time receive the operating differential subsidy. The restrictions were intended to protect the domestic competitors of Waterman's affiliate Sea-Land from the possible adverse effects of the subsidy. The thrust of these conditions was to protect Seatrain from having the subsidy used directly or indirectly to expand the frequency and type of service offered by Sea-Land in competition with Seatrain. Waterman S.S. Corp.,—Application Under Section 805(a), 6 F.M.B. 115 (1960).

On June 8, 1961, Waterman filed with the Board an outline of intercorporate changes described as "Plan for Termination of Affiliation" directed at divorcing or removing affiliation between Waterman and its domestic subsidiaries, Waterman of Puerto Rico and Sea-Land. This application was filed by Waterman without notice to Seatrain.[3] On August 24, 1961, Waterman was advised by the Board that execution of the proposed intercorporate changes would result in termination of affiliation between Waterman and its domestic carrier affiliates

1. Under Reorganization Plan #7, effective August 12, 1961, 75 Stat. 840, the Federal Maritime Board was abolished and its functions as pertinent herein were transferred to the Secretary of Commerce and are exercised by him through his delegate to the Maritime Subsidy Board.

2. Section 601 of the Merchant Marine Act, 1936, 49 Stat. 2001, 46 U.S.C. § 1171.

3. Seatrain became aware of the proposed plan of rearrangement when the plan was outlined in a prospectus filed with the Securities and Exchange Commission in connection with a public offering of Waterman stock.

within the meaning of Section 805(a) of the Act.[4]

On October 10, 1961, Seatrain made a written request for a hearing before the Board on the issue of Waterman's affiliation with Sea-Land but received no reply and no such hearing was held. Meanwhile the A. H. Bull Steamship Company brought an action in the District Court to enjoin execution of the subsidy contract and set aside the Board's determination of non-affiliation between Waterman and its subsidiaries. Seatrain intervened in that action. On January 4, 1962 the District Court dismissed counts one and three of Seatrain's complaint and denied the motion to dismiss count two. Count two asserted Seatrain's right to judicial review of any Board determination of Waterman's non-affiliation with domestic carriers.

On January 11, 1962, Waterman submitted to the Board a more detailed "Plan of Rearrangement." On February 27, 1962, the Board

"Found and determined that there will be no common officers, directors, stockholders or agents, or other arrangements, which would create any relationship within the meaning of the Merchant Marine Act, 1936, as amended, between Waterman Steam-ship Corporation and any person, firm or corporation which owns, operates, or charters directly or indirectly, any vessels engaged in domestic coastwise or intercoastal service if Waterman carries out in all respects material to the question of Section 805(a) the proposed Plan of Rearrangement dated June 8, 1961, as supplemented January 11, 1962."

On the basis of the Memorandum and determination of the Board, defendants in the District Court action moved for summary judgment. Summary judgment was granted in favor of defendants on May 23, 1962. Seatrain appealed.[5] Seatrain contends,

"(1.) that on the facts of this case, the District Court erred in construing Section 805(a) as not requiring a Board hearing on the question of affiliation between Waterman and domestic carriers; (2.) that the Board's findings were inadequate for judicial review on the issue of affiliation and (3.) that the Board's approval without hearing of a plan of reorganization to divorce Waterman from its domestic carrier affiliates was an unlawful modification of its prior order en-

---

4. Section 805(a) provides in pertinent part:
"It shall be unlawful to award or pay any subsidy to any contractor under authority of sections 1171–1182 of this title [46], or to charter any vessel to any person under sections 1191–1204 of this title [46], if said contractor or charterer, or any holding company, subsidiary, affiliate, or associate of such contractor or charterer, or any officer, director, agent, or executive thereof, directly or indirectly, shall own, operate, or charter any vessel or vessels engaged in the domestic intercoastal or coastwise service, or own any pecuniary interest, directly or indirectly, in any person or concern that owns, charters, or operates any vessel or vessels in the domestic intercoastal or coastwise service, without the written permission of the Federal Maritime Board or the Secretary of Commerce. Every person, firm, or corporation having any interest in such application shall be permitted to in-tervene and the Board or Secretary shall give a hearing to the applicant and the intervenors. The Board or Secretary shall not grant any such application if the Board or Secretary finds it will result in unfair competition to any person, firm, or corporation operating exclusively in the coastwise or intercoastal service or that it would be prejudicial to the objects and policy of this chapter * * *.
"If such application be allowed, it shall be unlawful for any of the persons mentioned in this section to divert, directly or indirectly, any moneys, property, or other thing of value, used in foreign-trade operations, for which a subsidy is paid by the United States, into any such coastwise or intercoastal operations; and whosoever shall violate this provision shall be guilty of a misdemeanor."

5. A. H. Bull Steamship Company, the original plaintiff in the District Court, is not a party to this appeal.

tered after hearings which were mandatory under the statute."

■ In essence the issue is whether Section 805(a) requires hearings when the Board passes on the question of affiliation or nonaffiliation of a subsidized foreign commerce carrier with a domestic commerce carrier. Appellants point to that portion of Section 805(a) which contains language to the effect that

"Every person, firm, or corporation having any interest in *such application* shall be permitted to intervene and the Board or Secretary shall give a hearing to the *applicant* and the intervenors."

The key words relied upon by appellant are italicized and the question is to what those words and the command of a hearing refer. Section 805(a) contains no antecedent for "such application" or "applicant" but an examination of the entire statute and consideration of the statutory scheme and its legislative history [6] satisfies us that the hearing is required only on an application of a subsidized foreign commerce carrier to *continue* domestic operations, not for a determination of non-affiliation.

The operative pattern of Section 805 (a) is manifest from its text as a whole. If a subsidized carrier applies for waiver of the bar of Section 805(a) and if after hearing the Board determines that the foreign commerce carrier seeking subsidy has an affiliate operating in the domestic trade, it may in its discretion remove the bar of Section 805(a) and allow subsidy notwithstanding affiliation with a domestic carrier. Because of the possible impact on other domestic carriers they must be heard before the bar of Section 805(a) is waived. But if the foreign carrier has no affiliate in domestic trade, no permission, and therefore no hearing, is called for. Similarly if a disabling affiliation is removed by a carrier which had been granted a subsidy subject to divesting conditions, no notice or hearing is required. In short hearings were contemplated only on an application *to continue* domestic operations while receiving subsidy as a foreign commerce carrier, but not on the issue whether a subsidized carrier has a domestic affiliate. When Waterman sought permission to continue its domestic operations through subsidiaries a full hearing was conducted as required and Seatrain participated, as has been pointed out.

Section 805 thus becomes operative when a foreign commerce carrier with domestic shipping affiliations makes application to the Board for "written permission" to continue what would, absent permission, be illegal affiliation for a subsidized carrier. If the subsidized foreign commerce carrier believes its affiliation with domestic shipping does not fall within the prohibition of Section 805(a), nothing in the Act compels it to apply for permission to continue the affiliation. Obviously a carrier acts on its belief at its own risk. Upon application by such carrier for a subsidy, the Board could award the subsidy without formal hearings, despite the fact that the Board must determine many issues of fact relating to the applicant's qualifications as established by the Act. See 46 U.S.C. § 1171. If the Board grants the subsidy and the carrier is in fact affiliated with a domestic carrier within the prohibition of § 805(a), any diversion, directly or indirectly, of assets used in subsidized foreign operations into any domestic operations is a misdemeanor. 46 U.S.C. §§ 1223(a), 1228. The obvious purpose is to preclude having any part of the subsidy aid the domestic operations, for which no subsidy is available, and to prevent an advantage for one carrier to the detriment of his domestic competitors.

Here Waterman, a foreign commerce carrier, had already received the Board's permission to continue its domestic affiliations subject to certain restrictions. That permission was granted after hearing in which Seatrain intervened and participated. Waterman S.S. Corp.— Application Under § 805(a), supra. The

6. S.Rep. 1721, 74th Cong., 2d Sess., (1936), p. 19.

action of the Board which Seatrain now challenges is the subsequent Board determination, without hearings, that no proscribed affiliation would be present once the plan of reorganization was carried out.

■ The question presented therefore is this: When the Board determines that facts, upon which its determination of prohibited affiliation under Section 805 (a), have changed, is the Board required to conduct a hearing in which the domestic competitors of the foreign commerce carrier have a right to participate, to determine whether domestic affiliation continues where the foreign commerce carrier is not applying for exemption under Section 805(a) but is merely submitting a proposed plan for reorganization divesting itself of disqualifying affiliations?

We think not. The change in the facts and the legal relations of Waterman with domestic carriers, *i.e.*, a change in its affiliation with them restores the foreign commerce carrier to the position in which, like any subsidized foreign carrier, it must determine at its own risk whether or not its affiliations with other carriers and the use of assets of the subsidized operations bring it within the prohibitions of Section 805(a). If at this juncture the carrier determines that it does not, it need not apply for exemption under Section 805(a) and no hearing is required. If the subsidized carrier has incorrectly appraised the legal character of its affiliation and if any assets used in foreign operations are diverted into domestic operation, the carrier is subject to prosecution. The pertinent language of Section 805(a) is plain "If such application [for subsidy] be allowed, it shall be unlawful for any of the persons mentioned in this section to divert, directly or indirectly, any moneys, property, or other thing of value, used in foreign-trade operations, for which a subsidy is paid by the United States, into any such coastwise or intercoastal operations; and whosoever shall violate this provision shall be guilty of a misdemeanor."

■ We do not read the Board's "determination" of February 27, 1962, as a grant of immunity from the penalties of the Act if in fact and law appellees or any of them are in violation. Cf. Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947).

It is true, as appellant urges, that Congress has provided under certain sections of the Act that hearings be held in which competitors are allowed to intervene to aid the Board in the enforcement of the Act against violators. However, as we read Section 805(a) Congress has made no such provision with regard to the determination of proscribed domestic affiliation within the meaning of that section except in the limited instance outlined above. Congress has provided for enforcement of the affiliation provision primarily by criminal proceedings, rather than by administrative proceedings, in any case where subsidized assets inure to the benefit of an affiliated domestic carrier.

■ Appellant contends that the Board should have made more elaborate findings than it did and requests us to remand the case to the Board so that such findings may be made. Appellant places great reliance on Pacific Far East Line, Inc. v. Federal Maritime Board, 107 U.S.App.D.C. 155, 275 F.2d 184 (1960). However that case is not in point; it stands for the proposition that findings of the nature sought by appellant must be made after the administrative agency holds a trial type hearing which is required by statute. See Bersoff v. Donaldson, 84 U.S.App.D.C. 226, 174 F.2d 494 (1949). The Board's memorandum of February 27, 1962, was in the nature of an advisory opinion rendered at the request of Waterman. It did not have the effect of adjudicating legal rights since, as we have pointed out, it did not exempt Waterman from criminal sanctions for violation of Section 805 of the Act. Cf. Federal Crop Ins. Corp. v. Merrill, supra. In view of our disposition of the case we need not reach other contentions made.

The judgment of the District Court is Affirmed.